IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

PAUL TARTAGLIA,

                   Plaintiff,        Civil Action No.
   v.                         9:07-CV-00849 (LEK/DEP)

SCOTT CARLSEN, *et al.*,

                   Defendants.

_____

APPEARANCES:               OF COUNSEL:

FOR PLAINTIFF:

PAUL TARTAGLIA, *Pro Se*

FOR DEFENDANTS:

HON. ANDREW M. CUOMO       SHOSHANAH V. ASNIS, ESQ.
Attorney General of            Assistant Attorney General
the State of New York
The Capitol
Albany, NY 12224

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

REPORT AND RECOMMENDATION

     Plaintiff Paul Tartaglia, a prison inmate who is proceeding *pro se*

and *in forma pauperis*, has commenced this civil rights action pursuant to

42 U.S.C. § 1983 against Scott Carlsen, the Acting Superintendent of the

Ulster Correctional Facility ("Ulster"), and two corrections employees at the prison identified only as John Doe defendants, complaining of a constitutional violation alleged to have occurred during the time of his confinement at Ulster.  In his complaint, as amended, plaintiff asserts that his Fourth Amendment rights were violated as a result of a strip search conducted upon his transfer out of Ulster and into the custody of local law enforcement officials pursuant to a local warrant for his arrest.  As relief, plaintiff seeks recovery of $1,000,000 in damages from each defendant based upon the allegedly unconstitutional search.

Currently pending before the court is a motion by defendant Carlsen, the only defendant thus far identified and appearing in the action, seeking dismissal of plaintiff's claim, both on the merits and on the ground of qualified immunity.  Defendant's motion also seeks the entry of a protective order pursuant to Rule 26(c) of the Federal Rules of Civil Procedure staying discovery, pending resolution of the dismissal motion.

Having carefully reviewed plaintiff's amended complaint, in light of the arguments raised by the defendant, I recommend a finding that defendant Carlsen, if it can ultimately be shown that he was personally involved in the violation alleged, is nonetheless entitled to qualified

2

immunity from suit, and therefore recommend dismissal of plaintiff's complaint as against him.  Additionally, in the interest of judicial economy, I recommend dismissal of plaintiff's claims against the remaining John Doe defendants, without prejudice, and will stay discovery pending final disposition of the instant motion.

I.    BACKGROUND[1]

_____Plaintiff's amended complaint provides scant detail regarding the factual underpinnings of his claims.  That pleading alleges that on June 1, 2007 Tartaglia, apparently at the time a prison inmate entrusted to the custody of the New York State Department of Correctional Services ("DOCS") and designated to Ulster, was subjected to a strip search while at the facility.  Amended Complaint (Dkt. No. 7) ¶¶ 3-6.  The search was conducted by an unidentified corrections officer, on approval of a corrections sergeant whose identity is also unknown to the plaintiff.  *Id.* ¶¶ 6-8.

---

[1]     In light of the procedural posture of this case, the following recitation is drawn principally from plaintiff's complaint, the contents of which have been accepted as true for purposes of the pending motion.  *See Erickson v. Pardus*, __U.S. __, 127 S. Ct. 2197, 2200 (2007) (citing *Bell Atlantic Corp. v. Twombly*, __ U.S. __, 127 S. Ct. 1955, 1965 (2007)); *see also Cooper v. Pate*, 378 U.S. 546, 546, 84 S. Ct. 1733, 1734 (1964).

At or about the time of the search, plaintiff was scheduled to be released from DOCS custody to parole supervision. Amended Complaint (Dkt. No. 7) and Exh. A. Rather than being released on that date, however, plaintiff was instead transferred into the custody of the New Windsor Town Police Department pursuant to an arrest warrant apparently lodged against him at Ulster as a detainer. *Id.* Plaintiff maintains that at the time the search was conducted, DOCS officials were aware of his scheduled release into parole supervision, and accordingly had no basis to conduct a strip search prior to relinquishing custody of him. *Id.*

II.   PROCEDURAL HISTORY

Plaintiff commenced this action on August 22, 2007 and, at the direction of the court, subsequently filed an amended complaint, the pleading whose sufficiency is now challenged by defendant's motion, on October 1, 2007. Dkt. Nos. 1, 6, 7. Named as defendants in Tartaglia's amended complaint are Scott C. Carlsen, the Superintendent at Ulster, and two John Doe defendants, identified only as the corrections sergeant and corrections officer who authorized and conducted the allegedly unlawful search, respectively. As a basis for his claim against the sole

4

named defendant, plaintiff alleges that "[d]efendant Carlsen does make policy, over see [sic] staff, and is aware of inmates being released to parole supervision."  Amended Complaint (Dkt. No. 7) ¶ 6.

On January 31, 2008 defendant Carlsen moved seeking dismissal of plaintiff's complaint, as well as a stay of discovery pending disposition of the motion.  Dkt. No. 18.  In his motion, defendant argues that plaintiff's complaint fails to sufficiently allege his personal involvement in the constitutional deprivations at issue, and that in any event he is entitled to qualified immunity.  Plaintiff has since filed a memorandum in opposition to defendant's motion, additionally asserting that it should be stricken since defendant's moving papers were not properly served upon him. Dkt. No. 20.

Defendant's motion, which is now ripe for determination, has been referred to me for the issuance of a report and recommendation, pursuant to 28 U.S.C. 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c). *See also* FED. R. CIV. P. 72(b).

III.    DISCUSSION

A.    Plaintiff's Request to Strike

As a threshold procedural matter, plaintiff requests that defendant's

motion be "quashed" based upon insufficiency of service.  In essence Tartaglia, who appears to have actually received defendant's motion papers, nonetheless asks that the motion be stricken based upon his apparent refusal to accept delivery of the motion papers by prison officials at the Fishkill Correctional Facility and the alleged failure of defendant's counsel to provide a proper affidavit of service.  Plaintiff's Memorandum (Dkt. No. 20) at pp. 4-5.

Plaintiff's service argument is easily dispensed with.  According to a declaration of service attached to defendant's motion papers, those papers were served by mail upon the plaintiff, addressed to the Franklin Correctional Facility, P.O. Box 10, Malone, New York 12953 – the address reflected on the court's records.[2]  *See* Declaration of Service (Dkt. No. 18-3).  The rule generally applicable to the service of papers in an action, other than the initial summons and complaint, provides, in relevant part, that

[a] paper is served under this rule [governing

---

[2]      Neither the record nor plaintiff's papers reveal the circumstances surrounding his transfer out of the Franklin Correctional Facility, where he was being held at the time the action was commenced, and into Fishkill.  Although plaintiff was reminded of his obligation under the court's local rules to promptly notify the court of any change in address, *see* N.D.N.Y.L.R. 10.1(b)(2), no change of address form reflecting the transfer was ever received from the plaintiff.

6

> service and filing of pleadings and other papers]
> by:
>
>            *   *   *
>
> (C) mailing it to the person's last known address –
> in which event service is complete upon mailing; . .
> .

Fed. R. Civ. P. Rule 5(b)(2)(C).  Since the motion papers were mailed to

Tartaglia by defendant's counsel at the address reflected in the court's

records, service was complete upon mailing, and it is of no moment that

he may have refused to accept those service papers or that an affidavit of

service reflecting his actual receipt and acceptance of those papers was

not filed with the court.  *See generally Greene v. WCI Holdings Corp.*, 136

F.3d 313, 315 (2d Cir. 1998) (stating that "service under [Federal] Rule

5(b) is accomplished when the envelope is deposited at a post office or in

a mail box"); *Anthony v. Marion County General Hosp.*, 617 F.2d 1164,

1168 n.5 (5th Cir. 1980) (noting that "refusal to accept mail does not

vitiate service") (citations omitted).  Plaintiff's request for the denial of

defendant's motion on this basis therefore lacks merit.

     B.     <u>Standard of Review</u>

     A motion to dismiss a complaint, brought pursuant to Rule 12(b)(6)

of the Federal Rules of Civil Procedure, calls upon a court to gauge the

facial sufficiency of that pleading, utilizing as a backdrop a pleading standard which is particularly unexacting in its requirements.  Rule 8 of the Federal Rules of Civil Procedure requires only that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  FED. R. CIV. P. 8(a)(2).  Absent applicability of a heightened pleading requirement such as that imposed under Rule 9, a plaintiff is not required to plead specific factual allegations to support the claim; rather, "the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Erickson v. Pardus*, __ U.S. __, 127 S. Ct. 2197, 2200 (2007) (quoting *Bell Atlantic Corp. v. Twombly*, __ U.S. __, 127 S. Ct. 1955, 1964 (2007) (other quotations omitted)); *cf. Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007) (acknowledging that a plaintiff may properly be required to illuminate a claim with some factual allegations in those contexts where amplification is necessary to establish that the claim is "plausible").  Once the claim has been stated adequately, a plaintiff may present any set of facts consistent with the allegations contained in the complaint to support his or her claim.  *Twombly*, 127 S. Ct. at 1969 (observing that the Court's prior decision in *Conley v. Gibson*, 355 U.S. 41, 78 S. Ct. 99 (1957),

"described the breadth of opportunity to prove what an adequate complaint claims, not the minimum standard of adequate pleading to govern a complaint's survival").

In deciding a Rule 12(b)(6) dismissal motion, the court must accept the material facts alleged in the complaint as true, and draw all inferences in favor of the non-moving party. *Cooper v. Pate*, 378 U.S. 546, 546, 84 S. Ct. 1722, 1734 (1964); *Miller v. Wolpoff & Abramson, LLP*, 321 F.3d 292, 300 (2d Cir.), *cert. denied*, 540 U.S. 823, 124 S. Ct. 153 (2003); *Burke v. Gregory*, 356 F. Supp. 2d 179, 182 (N.D.N.Y. 2005) (Kahn, J.). The burden undertaken by a party requesting dismissal of a complaint under Rule 12(b)(6) is substantial; the question presented by such a motion is not whether the plaintiff is likely ultimately to prevail, "'but whether the claimant is entitled to offer evidence to support the claims.'" *Log On America, Inc. v. Promethean Asset Mgmt. L.L.C.*, 223 F. Supp. 2d 435, 441 (S.D.N.Y. 2001) (quoting *Gant v. Wallingford Bd. of Educ.*, 69 F.3d 669, 673 (2d Cir. 1995) (other quotations omitted)). Accordingly, a complaint should be dismissed on a motion brought pursuant to Rule 12(b)(6) only where the plaintiff has failed to provide some basis for the allegations that support the elements of his or her claim. *See Twombly*,

127 S. Ct. at 1969, 1974; *see also Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007) ("In order to withstand a motion to dismiss, a complaint must plead 'enough facts to state a claim for relief that is plausible on its face'") (quoting *Twombly*).  "While *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to 'nudge [plaintiffs'] claims across the line from conceivable to plausible.'"  *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (3d Cir. 2007) (quoting *Twombly*, 127 S. Ct. at 1974).

When assessing the sufficiency of a complaint against this backdrop, particular deference should be afforded to a *pro se* litigant whose complaint merits a generous construction by the court when determining whether it states a cognizable cause of action.  *Erickson*, 127 S. Ct. at 2200 ("'[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers'") (quoting *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S. Ct. 285, 292 (1976) (internal quotations omitted)); *Davis v. Goord*, 320 F.3d 346, 350 (2d Cir. 2003) (citation omitted); *Donhauser v. Goord*, 314 F. Supp. 2d 119, 121 (N.D.N.Y. 2004) (Hurd, J.).  In the event of a perceived deficiency in a *pro se* plaintiff's complaint, a court should not dismiss

without granting leave to amend at least once if there is any indication that a valid claim might be stated.  *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991); *see also* FED. R. CIV. P. 15(a) (leave to amend "shall be freely given when justice so requires").

C.    Personal Involvement[3]

In his amended complaint plaintiff alleges that defendant Carlsen, as the superintendent at Ulster, permitted corrections officers to strip search him during the early morning of June 1, 2007, and that in his capacity as making policy and having oversight of staff he should be held accountable for the alleged constitutional deprivation which resulted. Defendant Carlsen maintains that these allegations are insufficient to implicate his personal involvement in the constitutional deprivation alleged.

It is apparent from plaintiff's amended complaint and submission in

---

[3]    While technically the rules of notice pleading anticipate that the entirety of plaintiff's allegations against each defendant will be contained in the complaint, in light of his *pro se* status I will consider plaintiff's opposition papers in conjunction with his complaint in order to assess the sufficiency of evidence as to the defendant's personal involvement in the civil rights violations alleged.  *Negron v. Macomber*, No. 95 Civ. 4151, 1999 WL 608777, at *5 (S.D.N.Y. Aug. 11, 1999); *see also Gill v. Mooney*, 824 F.2d 192, 195 (2d Cir. 1987); *Tsai v. Rockefeller Univ.*, 137 F. Supp. 2d 276, 280 (S.D.N.Y. 2001); *Donahue v. United States Dep't of Justice*, 751 F. Supp. 45, 49 (S.D.N.Y. 1990), *abrogated on other grounds*, *Sosa v. Alvarez-Machain*, 542 U.S. 692, 124 S. Ct. 2739 (2004).

opposition to defendant's motion that defendant Carlsen is named as a defendant by virtue of his capacity as the superintendent at Ulster.  It is well-established, however, that a supervisor cannot be liable for damages under section 1983 solely by virtue of being a supervisor; there is no *respondeat superior* liability under section 1983.  *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003); *Wright*, 21 F.3d at 501.  A supervisory official can, however, be liable in one of several ways, including when he or she 1) has directly participated in the challenged conduct; 2) after learning of the violation through a report or appeal, failed to remedy the wrong; 3) created or allowed to continue a policy or custom under which unconstitutional practices occurred; 4) was grossly negligent in managing the subordinates who caused the unlawful event; or 5) failed to act on information indicating that unconstitutional acts were occurring.  *Iqbal*, 490 F.3d at 152-53; *see also Richardson*, 347 F.3d at 435; *Wright*, 21 F.3d at 501; *Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986).

Plaintiff's amended complaint and motion opposition papers are equivocal as to the basis for asserting personal liability against defendant Carlsen.  Clearly, there is no allegation by the plaintiff that the defendant actually participated in the disputed strip search.  Although plaintiff asserts

that he apprised Carlsen of the violation after the fact, since it was an isolated occurrence there is no potential for him to claim that after receiving that report the superintendent failed to rectify the violation or alter the policy or custom under which it occurred in such a way as to prevent future violations of the plaintiff's rights.  Similarly, plaintiff has not alleged anything which would arise to a level sufficient to support a finding of gross negligence in defendant's management of the corrections officers involved in the unlawful event, nor has he maintained that defendant failed to act on information, received prior to the search, suggesting that it could occur.

Searches of New York State prison inmates for contraband are governed by DOCS Directive No. 4910.[4]  As plaintiff notes, although that directive permits the strip frisk of an inmate being transferred from one DOCS facility to another, it does not appear to address the circumstances now presented, where an inmate is being transferred directly from the DOCS into the custody of another law enforcement agency.

---

[4]     DOCS Directive No. 4910 was drafted in accordance with a consent decree in a class action asserting Fourth Amendment violations associated with inmate strip searches.  *See Duamutef v. Leonardo,* No. 91-CV-1100, 1993 WL 428509, at *3 (N.D.N.Y. Oct. 22, 1993) (citing *Hurley v. Ward,* 77 Civ. 3847 (RLC) (S.D.N.Y. 1983)).

Plaintiff may ostensibly be arguing that defendant Carlsen instituted

a policy, or was aware of a practice within the facility, of strip frisking

inmates being released by the DOCS into the custody of another agency

even though that situation is not addressed by DOCS Directive No. 4910.[5]

Such an allegation could potentially implicate plaintiff's knowledge of the

challenged policy, and thus his personal involvement.  *See, e.g., Iqbal*,

490 F.3d at 152-53; *James v. Aidala*, 389 F. Supp. 2d 451, 452-53

(W.D.N.Y. 2005).  Accordingly, I recommend against dismissal of

plaintiff's claims for lack of personal involvement.[6]

    D.    <u>Qualified Immunity</u>

---

    [5]    Plaintiff's submissions are conflicting in this regard.  It appears from his memorandum that plaintiff may be contending that his strip search was inadvertent and unintended, resulting solely from the fact that he was inadvertently strip frisked because, as he awaited transfer into the custody of the New Windsor Town Police Department, he was apparently held together with a group of inmates who were being transferred into another DOCS correctional facility, and who were thus properly strip searched under DOCS Directive No. 4910.

    [6]    Plaintiff alleges that he sent letters to defendant Carlsen reporting the violations which are now the subject to his complaint.  *See* Plaintiff's Motion Opposition (Dkt. No. 20) Exhs. B, C.  Those letters, apparently sent after the alleged violation occurred, stemming from a solitary event, are insufficient to establish defendant Carlsen's personal involvement in the constitutional violations alleged.  *See Greenwaldt v. Coughlin*, No. 93 Civ. 6551, 1995 WL 232736, at *4 (S.D.N.Y. Apr.19, 1995) ("[I]t is well-established that an allegation that an official ignored a prisoner's letter of protest and request for an investigation of allegations made therein is insufficient to hold that official liable for the alleged violations.") (citing, *inter alia, Garrido v. Coughlin*, 716 F. Supp. 98, 100 (S.D.N.Y.1989) (dismissing claim against superintendent of prison where only allegation was that he ignored inmate's request for an investigation).

As an alternative basis for dismissal of plaintiff's claims against him, defendant Carlsen asserts his entitlement to qualified immunity.  In substance, the superintendent argues that because it has not been alleged that he was personally involved in the constitutional violation, he could not be reasonably expected to believe that his actions abridged plaintiff's rights and, accordingly, he should be afforded immunity from suit.

Qualified immunity shields government officials performing discretionary functions from liability for damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738 (1982) (citations omitted). Accordingly, governmental officials sued for damages "are entitled to qualified immunity if 1) their actions did not violate clearly established law, or 2) it was objectively reasonable for them to believe that their actions did not violate such law."  *Warren v. Keane,* 196 F.3d 330, 332 (2d Cir. 1999) (citing *Salim v. Proulx,* 93 F.3d 86, 89 (2d Cir. 1996)); *see also Zellner v. Summerlin*, 494 F.3d 344, 367 (2d Cir. 2007); *Iqbal v. Hasty*, 490 F.3d 143 (2d Cir. 2007).  The law of qualified immunity seeks to strike a

15

balance between overexposure by government officials to suits for

violations based upon abstract rights and an unduly narrow view which

would insulate them from liability in connection with virtually all

discretionary decisions.  *Locurto v. Safir*, 264 F.3d 154, 162-63 (2d Cir.

2001); *Warren*, 196 F.3d at 332.  As the Second Circuit has observed,

> [q]ualified immunity serves important interests in
> our political system, chief among them to ensure
> that damages suits do not unduly inhibit officials in
> the discharge of their duties by saddling individual
> officers with personal monetary liability and
> harassing litigation.

*Provost v. City of Newburgh*, 262 F.3d 146, 160 (2d Cir. 2001) (internal

quotations omitted) (citing, *inter alia*, *Bivens v. Six Unknown Named*

*Agents of the Fed. Bureau of Narcotics*, 456 F.2d 1339, 1348 (2d Cir.

1972)).

A claim of entitlement to qualified immunity is subject to the three

step analysis.  *Harhay v. Town of Ellington Bd. of Educ.,* 323 F.3d 206,

211 (2d Cir. 2003).  As a threshold matter it must first be determined

whether, based upon the facts alleged, plaintiff has facially established a

constitutional violation.  *Id.*; *Gilles v. Repicky*, 511 F.3d 239, 243-44 (2d

Cir. 2007).  If the answer to this inquiry is in the affirmative, the court must

then turn its focus to whether the right in issue was clearly established at

16

the time of the alleged violation.  *Id.* (citing *Saucier v. Katz*, 533 U.S. 194, 201-02, 121 S. Ct. 2151, 2156 (2001)); *see also Poe v. Leonard*, 282 F.3d 123, 132-33 (2d Cir. 2002).  Finally, if the plaintiff had a clearly established, constitutionally protected right that was violated, he or she must demonstrate that it was not objectively reasonable for the defendant to believe that his action did not violate such law.  *Harhay*, 323 F.3d at 211; *Poe*, 282 F.3d at 133 (quoting *Tierney v. Davidson*, 133 F.3d 189, 196 (2d Cir. 1998) (quoting, in turn, *Salim*, 93 F.3d at 89)).

The first line of inquiry in the qualified immunity algorithm requires analysis of whether the plaintiff has succeeded in facially establishing a constitutional deprivation.  While as an inmate plaintiff's constitutional rights were by definition significantly curtailed by virtue of his incarceration, he nonetheless retained certain rights, including under the Fourth Amendment as made applicable to the state pursuant to the Fourteenth Amendment.  *Covino v. Patrissi,* 967 F.2d 73, 77 (2d Cir. 1992).  As the Second Circuit has noted, because "[p]rison walls do not form a barrier separating prison inmates from the protections of the Constitution[,]", . . ., while inmates may lose many of their freedoms at the prison gate, they retain 'those rights [that are] not fundamentally

17

inconsistent with imprisonment itself or incompatible with the objectives of incarceration." *Id.* (citing and quoting *Turner v. Safley,* 482 U.S. 78, 84, 107 S. Ct. 2254, 2259) (1987) and *Hudson v. Palmer,* 468 U.S. 517, 523, 104 S. Ct. 3194, 3198 (1984).

In *Bell v. Wolfish*, the Supreme Court established that although "convicted prisoners and pretrial detainees[] retain some Fourth Amendment rights upon commitment to a corrections facility," strip and body cavity searches are not per se violations of the Fourth Amendment, which only prohibits *unreasonable* searches.  441 U.S. 520, 558, 99 S. Ct. 1861, 1884 (1979).  "The test of reasonableness under the Fourth Amendment . . . requires a balancing of the need for the particular search against the invasion of the personal rights that the search entails." *Id.* at 559, 99 S.Ct. at 1884.[7]  The need for searches is heightened in certain contexts, as the Court in *Bell* acknowledged, observing that

> [a] detention facility is a unique place fraught with serious security dangers.  Smuggling of money, drugs, weapons, and other contraband is all too common an occurrence. And inmate attempts to secrete these items into the facility by concealing

---

[7]     The Supreme Court also noted that a court "must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." *Bell*, 441 U.S. at 559, 99 S. Ct. at 1884 (citations omitted).

> them in body cavities are documented in this . . . and
> in other cases.

*Id.*, 99 S. Ct. at 1884.  Upon balancing the institutional interests of the

prison against the privacy interests of the inmates, the Court in *Bell* held

that such searches may "be conducted on less than probable cause."  *Id.* at

560, 99 S. Ct. at 1885.

In *Iqbal v. Hasty*, the Second Circuit court elaborated on the Supreme

Court's general guidelines as set forth in *Bell*.  490 F.3d 143, 171 (2d Cir.

2007) (citing *Bell*).  In that case, it was noted that two lines of cases have

evolved within the Circuit regarding strip searches - one line pertaining to

searches in jails, and another concerning searches in prisons.  *Id.* at 171-

72.  In cases where the search occurs in a jail setting, the standard of

review for such searches is whether or not the jail officials have a

"'reasonable suspicion'" that the person being searched is in possession of

an impermissible item.  *Id.* (citing *Weber v. Dell*, 804 F.2d 796, 802 (2d Cir.

1986); *Wachtler v. County of Herkimer*, 35 F.3d 77, 81 (2d Cir. 1993);

*Walsh v. Franco*, 849 F.2d 66, 69 (2d Cir. 1988)).  If the search occurs at a

prison, however, the court must apply the "'legitimate penological interests'

standard" as articulated in *Turner v. Safley*, which requires an examination

of four factors; including 1) the existence of "a valid, rational connection

19

between the prison regulation and the legitimate government interest put forward to justify it"; 2) "whether there are alternative means of exercising the right in question that remain open to prison inmates"; 3) "whether accommodation of the asserted constitutional right will have an unreasonable impact upon" prison officials and "resources"; and 4) "whether there are reasonable alternatives available to the prison authorities." *Id.* (citing *Covino*, 967 F.2d at 75, 78-79 (citing, in turn, *Turner*, 482 U.S. at 89-90, 107 S. Ct. at 2261-62).

As can be seen, the cases which have addressed strip and body cavity searches of inmates have focused upon both the level of intrusion of the search upon an inmate's privacy interests and expectations, and the competing penological and security concerns, if any, serving as justification for the search. *See, e.g., Miller v. Bailey*, No. 05-CV-5493, 2008 WL 1787692, at *8-10 (E.D.N.Y. Apr. 17, 2008); *Duamutef,* 1993 WL 428509, at *2-3; *Covino,* 967 F.2d at 78-80. When examining the penological considerations implicated in the search courts, with little or no expertise in matters of security and the operation of prison facilities, typically afford wide deference to the views of prison officials. *Duamutef*, 1993 WL 428509, at *2-3 (citing, *inter alia*, *Turner* ).

20

At this early stage in the proceedings I am unable to conclude with complete certainty that plaintiff has not pleaded a facial violation of his Fourth Amendment rights.  Plaintiff asserts that immediately prior to being released from DOCS custody he was strip searched, and that the strip search was neither compliant with DOCS Directive No. 4910 nor supported by other legitimate penological concerns.  Plaintiff also alleges that the search was conducted pursuant to, or with the knowledge of, superintendent Carlsen.  Affording plaintiff the benefit of all doubts and resolving all ambiguities in his favor, at this juncture I am unable to state that he has not asserted a plausible Fourth Amendment violation claim.

Turning to the second step of the qualified immunity protocol, I am also unable to conclude that the Fourth Amendment rights at stake in this action were not clearly established at the time of the strip search in this case.  By the time of the search a considerable body of case law had evolved addressing prison strip searches, including the Supreme Court's seminal decision in *Bell v. Wolfish,* 441 U.S. 520, 99 S. Ct. 1861 (1979). *See Iqbal*, 490 F.3d at 170-71 (citing *Shain v. Ellison*, 273 F.3d 56 (2d Cir. 2001); *Covino v. Patrissi*, 967 F.2d 73 (2d Cir. 1992); *Weber v. Dell*, 804 F.2d 796 (2d Cir. 1986).  That controlling authority, including more recent

21

cases, has uniformly made clear that the Fourth Amendment does not afford prison officials a blank check to conduct strip or body cavity searches of inmates at their unfettered discretion or whim.  *See, e.g., Hodges v. Stanley*, 712 F.2d 34, 35 (2d Cir. 1983) (finding that plaintiff stated a claim for a Fourth amendment violation by alleging consecutive strip searches while plaintiff was under prison escort); *Jean-Laurent v. Wilkerson*, 438 F. Supp. 2d. 318, 323 (S.D.N.Y. 2006) (noting that searches "accompanied by physical and verbal abuse" and searches following "non-contact, supervised visits" without a showing of the risk that contraband had been smuggled in are unconstitutional) (citations omitted).

The qualified immunity analysis in this case thus turns on whether it was objectively reasonable for Superintendent Carlsen, assuming *arguendo* that he knew of and/or approved the strip search of the plaintiff, to believe that the action did not violate his right under the Fourth Amendment.  It should be noted that DOCS Directive No. 4910 authorizes, and court decisions have approved, strip searches of inmates when exiting a prison facility for the purpose of being transferred to another DOCS prison.  See, e.g., *Duamutef*, 1993 WL 428509, at *7;

22

*Shabazz v. Pico*, 994 F. Supp. 460, 472-73 (S.D.N.Y. 1998) (discussing

Directive # 4910); *cf. Gomez v. Coughlin*, 685 F. Supp. 1291, 1300

(S.D.N.Y. 1988) (finding that a strip search upon transfer to custody to

Involuntary Protective Custody was reasonable).  The same self-apparent

penological and security concerns which legitimize such a search are

presented when a prisoner is exiting a DOCS facility directly into the

custody of another law enforcement provider.  Under these

circumstances, I conclude that to the extent defendant Carlsen may have

known of and authorized or endorsed the search in this instance, either

individually or as part of a larger practice or policy, it was not objectively

unreasonable for him to believe that his actions did not violate plaintiff's

Fourth Amendment rights.  Accordingly, I recommend that plaintiff's

claims against defendant Carlsen be dismissed on the basis of qualified

immunity.

IV.   SUMMARY AND RECOMMENDATION

_____In light of the procedural posture of the case and plaintiff's

allegations, it is premature to conclude that defendant Carlsen had no

personal involvement, by virtue of his position as the superintendent at

Ulster, in the creation and enforcement of a policy or practice under which

the strip search at issue in this case was conducted.  I nonetheless find, however, that under the circumstances of this case defendant Carlsen is entitled to qualified immunity, since no reasonable person in his circumstances would conclude that conducting a strip search of the plaintiff upon his transfer from one legal custodian to another was not rationally related to legitimate penological concerns.  And, in view of the fact that Superintendent Carlsen is the only defendant identified by name and served in this case, I conclude that plaintiff's complaint is subject to dismissal in its entirety, without prejudice to plaintiff's right to commence a separate action against the various other defendants presently identified only as John Doe defendants.  Accordingly, it is therefore hereby

RECOMMENDED that the motion of defendant Scott C. Carlsen to dismiss plaintiff's claims against him (Dkt. No. 18) be GRANTED on the basis of qualified immunity, and that plaintiff's complaint be DISMISSED in its entirety, without prejudice to plaintiff's right to assert claims in a new action against the defendants identified in this case only as John Doe defendants; and it is further

ORDERED, that pending final disposition of defendant's motion, all discovery in this action is hereby STAYED, pursuant to Rule 26(c) of the

24

Federal Rules of Civil Procedure.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court within TEN days.  FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW.  28 U.S.C. § 636(b)(1); FED. R. CIV. P.  6(a), 6(e), 72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir. 1993); and it is further hereby

ORDERED that the clerk of the court serve a copy of this Report and Recommendation upon the parties in accordance with this court's local rules.

David E. Peebles
U.S. Magistrate Judge

Dated:      July 31, 2008
            Syracuse, NY